Steven L. Rinehart (USB #11494)
**VESTED LAW, LLP**
2912 W. Executive Parkway, Suite 240
Lehi, UT 84043
Telephone: (888) 941-9933
Mobile: (801) 347-5173
Email: steve@utahpatentattorneys.com
*Attorney for Defendant*

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| THE GATHERING TREE D/B/A EDEN VILLAGE, a Missouri limited liability company; <br><br>                         Plaintiff, <br> vs. <br><br> MUDBOTS, LLC, a Utah limited liability company; <br><br>        Defendant / Counterclaimant. | Case No. 2:25-cv-315 <br><br> **ANSWER, COUNTERCLAIMS AND THIRD-PARTY CLAIMS** <br> (JURY DEMANDED) <br><br> Hon. Judge Jill Parrish |
| MUDBOTS, LLC, a Utah limited liability company; <br><br>               Third-party Plaintiff, <br> vs. <br><br> EDEN BUILDING SOLUTIONS, LLC, a Missouri limited liability company; <br><br>          Third-party Defendant. | |

COMES NOW Defendant Mudbots, LLC ("Mudbots"), by and through counsel undersigned, hereby answers Plaintiff's First Amended Complaint, and for cause of action against Plaintiff hereby alleges and counterclaims as follows:

**I.          ANSWER**

**FIRST DEFENSE**

Defendants respond to the numbered paragraphs of the Complaint as follows (headings below correspond to the headings found in the Complaint):

1.      Defendant is without information sufficient to admit nor deny the allegations in paragraph 1.

2.      Defendant is without information sufficient to admit nor deny the allegations in paragraph 2.

3.      Admit.

4.      Admit.

5.      Admit.

6.      Admit.

7.      Admit.

**GENERAL ALLEGATIONS**

8.      Defendant denies that Eden Village has the sole goal of ensuring no members of its community sleep outside, but admits Eden Village discovered Mudbots.

9.      Admit.

10.     Defendant is without information sufficient to admit nor deny the allegations in paragraph 10.

11.  Defendant admits individuals associated with, or accompanying, agents of Plaintiff visited Mudbots' Utah facility, but otherwise denies the allegations in paragraph 11.

12.  Defendant admits subparagraphs A, B, D, and E, but denies the remaining allegations.

13.  Defendant admits that Plaintiff agreed to purchase a set of printers, but otherwise denies the allegations in paragraph 13.

14.  Deny.

15.  Deny.

16.  Defendant admits Plaintiff signed the purchasing invoice, but denies it did so based upon Mudbots' representations.

17.  Admit.

18.  Deny.

19.  Deny.

20.  Deny.

21.  Deny.

22.  Deny.

## COUNT I – BREACH OF CONTRACT

23.  Defendants incorporate all the preceding paragraphs by reference.

24.  Admit.

25.  Deny.

26.  Deny.

27.  Deny.

28.  Deny.

## COUNT II – BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

29.    Defendants incorporate all the preceding paragraphs by reference.

30.    Admit.

31.    Admit.

32.    Admit.

33.    Deny.

34.    Deny.

35.    Deny.

36.    Deny.

37.    Deny.

## <u>AFFIRMATIVE DEFENSES</u>

### SECOND DEFENSE

The Complaint fails to state a claim upon which relief can be granted.

### THIRD DEFENSE

The Complaint is barred by the applicable statute of limitations.

### FOURTH DEFENSE

Plaintiff has not suffered damages and/or has failed to mitigate its damages.

### FIFTH DEFENSE

Plaintiff's claims fail due the prior breach doctrine.

### SIXTH DEFENSE

Defendants asserts the Complaint may fail for Plaintiff's unclean hands and other equitable

considerations, including representations Plaintiff may have previously made falsely representing

facts contradicting factual assertions made herein by Plaintiff.

### SEVENTH DEFENSE

Plaintiff has failed to substantially perform under the applicable contract.

## EIGHTH DEFENSE

Plaintiff's claims are barred in whole or in part, under the doctrine of acquiescence. Defendant alleges that Plaintiff has inter alia acquiesced to the applicable contract terms.

## NINTH DEFENSE

Plaintiff's claims are barred in whole or in part because Plaintiff ratified the applicable contract terms.

## TENTH DEFENSE

Plaintiff's claims are barred by equitable estoppel and/or promissory estoppel.

## ELEVENTH DEFENSE

Plaintiff's claims are barred in whole or in part because representations made by Defendant about its own business affairs constitute statements of opinion.

## TWELFTH DEFENSE

Plaintiff's claims are barred because Plaintiff fraudulently induced Defendant into entering the contract.

## THIRTENTH DEFENSE

Plaintiff's claims are barred by unsatisfied precedent conditions.

## FOURTENTH DEFENSE

Plaintiff's claims are barred by the doctrine of anticipatory repudiation.

## FIFTENTH DEFENSE

Defendant reserves the right to assert additional affirmative defenses which may become known.

## II.        COUNTERCLAIMS AND THIRD-PARTY CLAIMS

Defendant Mudbots, by and through counsel undersigned, asserts the following as its Counterclaims and Third-party Claims against Eden Village and Eden Building Solutions as follows:

### PARTIES, JURISDICTION AND VENUE

1.    Counterclaimant and Third-party Plaintiff Mudbots LLC D/B/A is a Utah limited liability company in good standing with its principal place of business in Tooele County, Utah.

2.    Upon information and belief, Counterclaim-defendant The Gathering Place, Inc. D/B/A Eden Village ("Eden Village") is a corporation formed under the laws of the State of Missouri with its principal place of business in Springfield, Missouri.

3.    Upon information and belief, Third-party Defendant Eden Building Solutions ("Eden Building Solutions") is a corporation formed under the laws of the State of Missouri with its principal place of business in Springfield, Missouri.

4.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A). There is also federal question jurisdiction pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction for the related state law claims pursuant to 28 U.S.C. § 1367.

5.    Eden Building Solutions is subject to jurisdiction in Utah for, inter alia, having signed at least two contracts referenced below naming Utah of the proper jurisdiction.

6.    Venue in this district is proper under 28 U.S.C. §§ 1391.

### GENERAL ALLEGATIONS

*Introduction*

7.      Mudbots is a manufacturer of automated robotic printers which print and erect buildings out of concrete. Mudbots is headquartered in Tooele, Utah in a large facility and is a leader in concrete 3D printing technologies. Mudbots undertakes great efforts to protect itself, its technology and clients by strictly conditioning the sale of its printers on detailed terms of purchase, called the Universal Terms of Purchase (UTOP). In 2021, Eden Village contacted Mudbots and later purchased two (2) printers from Mudbots subject to these UTOP. Before purchasing the printers, Eden Village misrepresented the intended use of the printers to Mudbots, including misrepresenting that Drury College would not be using a printer. Eden Village and its cohorts intentionally misrepresented to Mudbots that the printers would not be used publicly for educations purposes and or used by untrained personnel, knowing Mudbots would not sell to these parties. Eden Village came to Mudbots under false pretenses as a stalking horse for others in procuring the printers. Almost immediately, Eden Village began willfully violating many of the terms upon which the sale of the Eden Village printers, and discounts given to Eden Village, were premised. Eden Village also intentionally misrepresented its intended use of the printers, knowing before contracting with Mudbots that Eden Village intended to lodge a printer with Drury College (i.e. Drury University) for public use and display, which college supplies Eden Village with free labor and volunteers. Eden Village gave the second printer, purchased with nonprofits funds, to a for profit franchisee. Eden Village never had any intention of honoring its obligations under the UTOP. Despite numerous attempts to warn Eden Village of the seriousness of these violations, and negotiate amicable resolution, Eden Village has persisted in its violations which are causing irreparable harm to Mudbots. Eden Village has also intentionally disparaged and defamed

Mudbots for the purpose of inducing Mudbots' customers to cancel contracts with Mudbots, including Ascend Construction, and interfered with Mudbots' economic relationships.

***Mudbots' Background & Association with Eden Village***

8.    Mudbots began doing business in 2020 selling Mudbots concrete printers which have evolved technologically since. An example of a building printed with Mudbots' technology is shown below.



9.    In 2021, Counterclaim-defendant Eden Village approached Mudbots inquiring about the purchase of two concrete 3D printers allegedly for the prospective erection of a village in Missouri for the homeless.

10.   Between May 19 – 23, David Brown, a principal and agent of Eden Village, received and read introductory emails from Mudbots.

11.   David Brown created a first Mudbots profile for Eden Village through Mudbots website.

12.    These emails included emails with the subject lines "Getting Started", "Printer Pricing", "NDA", "Zoom Call Considerations", and "Deal Breakers."

13.    On, or about, June 29, 2021, Mudbots sent an email to Eden Village with the subject line: New Video is Up.

14.    On, or about, July 23, 2021, Mudbots sent an email to Eden Village with the subject line: Update on Printer pricing.

15.    On, or about, October 28, 2022, Linda K. Brown shared a trailer for a documentary entitled *No One Sleeps Alone* with Mudbots.

16.    Between November 22 – November 26, 2022, David Brown created a second Mudbots profile using a different email address than before.

17.    Before contacting Mudbots, Eden Village had already done significant research into the concrete 3D-printing world.

18.    Eden Village had previously entered a contract with one of Mudbot's competitors, Icon, and made public annoucements and/or statements about this relationship.

19.    Upon information and belief, Eden Village then terminated its relationship with Icon, and turned to Mudbots.

20.    Between November 22 – November 26, 2022, Nate Schlueter registered with Mudbots, signed the NDA attached hereto as **Exhibit A**, and read pricing emails.

21.    Between November 22 – November 26, 2022, Nate Schlueter, acting for Eden Village, appeared on Mystery Hour Instagram. Schlueter later received a Diverging Diamond Award.

22.    In November of 2022, David W. Brown, acting for Eden Village, signed the NDA Agreement attached hereto as **Exhibit B**.

23.  In November of 2022, many others signed the NDA Agreements collectively attached hereto as **Exhibit C.**

24.  Traci Sooter signed the NDA attached hereto as **Exhibit D**.

25.  Traci Sooter is, and has represented herself to be: a professor at Drury, an officer and/or owner of Eden Village; and an office and/or owner of Eden Building Solutions.

26.  Eden Village exchanged the confidential information it agreed in these NDAs not to disclose to Drury after signing the NDAs.

27.  From December 14 – December 15, 2022, Eden Village visited Mudbots' facility in Utah ("Mudbots University").

28.  Eden Village brought building professionals, engineers, and business owners of their franchisees to Mudbots for two-day, one-on-one, interactive demonstrations and preliminary purchase negotiations.

29.  Between December 19 and December 20, 2022, invoices were exchanged between Aaron and Eden Village.

30.  In January of 2023, Eden Village made the first printer payment to Mudbots.

31.  On, or about, January 4, 2023, Schlueter signed the invoices collectively attached hereto as **Exhibit E** on behalf of Eden Village (the "Invoices").

32.  The printers which Mudbots sells are very technically advanced pieces of equipment which require special training to operate.

33.  The printers include mechanical, chemical, and software-related functions.

34.  Eden Village and Eden Building Solutions knew specialized training was required to operate the Mudbots' printers.

35.     After purchasing the printers, Eden Village promptly had untrained individuals attempt to operate the printers who were not certified to operate the technically complex robotic printers.

36.     Purchase terms were negotiated and reached, and memorialized in the Invoices.

37.     As part of the negotiation process, Schleuter, acting for Eden Village, represented that Eden Village would be storing a printer at Drury College and would not be allowing students to view it.

38.     Despite representing that Eden Village would be using the printer, Eden Village then donated the printer to a for-profit franchisee.

39.     To some extent, Eden Village was acting as a stalking horse in purchasing the printers from Mudbots and intentionally mispresenting the intended use of the printers and that only trained individuals would make use of the printers.

40.     Eden Village also represented it was not contracting with Mudbots' to seek to compete with Mudbots.

41.     These Invoices incorporate the Universal Terms of Purchase (UTOP).

42.     The UTOP is attached hereto as **Exhibit F**.

43.     On, or about, January 31, 2023, Nate Schlueter participated in a teleconference with Mudbots on upcoming training.

44.     On, or about, February 3, 2023, Nate Schlueter, acting for Eden Building Solutions LLC, executed the Regional Master Dealer Agreement attached hereto as **Exhibit G** (the "RMD Agreement").

45.     The RMD Agreement referencing the "Terms or Purchase" in paragraphs 16(e) and 19.

46.     Upon information and belief, the reason that Mr. Schlueter executed the RMD Agreement on behalf of Eden Building Solutions was so that individuals associated with Eden Village could use hardware purchased by Eden Village (a nonprofit) in the for-profit ventures of Eden Building Solutions.

47.     Upon information and belief, Eden Building Solutions was created as a way of circumventing (and subverting) the law's non-profit prohibitions, and as an artifice to which monies and/or assets of the non-profit could be diverted for benefit of the principals of Eden Village vis-à-vis Eden Building Solutions.

48.     Upon information and belief, Eden Building Solutions was never properly capitalized.

49.     As such, Eden Building Solutions is the alter ego of Eden Village.

50.     Eden Village and Eden Building Solutions and jointly and severally liable for the claims asserted against Eden Village and against Eden Building Solutions.

51.     Upon information and belief, Eden Village benefits from free the free labor of students and volunteers from Drury College and one or more churches, who believe they are serving a charitable cause by volunteering, as well as engineering and design work.

52.     On, or about, February 6, 2023, Eden Building Solutions signed the Training Terms Agreement attached hereto as **Exhibit H**.

53.     The Training Terms Agreement, signed by Schlueter, incorporates the UTOP in paragraph 68.

54.     As part of the UTOP, Eden Village was given a 20% discount on the printer voidable if the UTOP were violated.

55.    Between February 6 – February 10, 2023, agents of Eden Village, including Brett, Kaden and Jedidiah registered with the Mudbots' website and received training and pricing materials from Mudbots.

56.    Between February and April of 2023, principals of Eden Village attended a training at the Mudbots' facility in Utah, which they did not finish.

57.    Eden Village personnel operated the equipment they would be purchasing, with assistance of Mudbot's personnel, and demonstrated to their own satisfaction that it printed and worked properly.

58.    Eden Village then ignored all of the post-training requirements to which it had agreed, which are designed to ensure Eden Village can print successfully without supervision from Mudbots. All of the extensive list of training requirements were ignored.

59.    In March of 2023, SFG News reported that Eden Village was using Mudbots' printers.

60.    Subsequently, upon information and belief, Eden Village has willfully engaged in dozens of violations of the terms of purchase, including *inter alia*: causing videos of the printer to be posted publicly online in numerous forums and refusing to act to remove such videos; allowing free access to the printers on the part of individuals not bound by nondisclosure agreements; manufacturing, or attempting to manufacture, buildings without finishing Mudbots' training certification; allowing untrained operators to print with the machine in the presence of others; and more than a dozen other violations of the terms.

61.    There was no agreement with Mudbots that Eden Village would donate use of a printer to Drury College for educational purposes. Eden Village and Drury were fully aware that to even explore this possibility, Eden Village and Drury would have been required to submit

a separate written proposal to Mudbots, which both wanted to avoid. Eden Village intentionally misrepresented to Mudbots that a printer would not be given to Drury College, with premeditated intent to deceive.

62.    Upon information and belief, Eden Village has failed to secure NDAs from students at Drury College as required by the UTOP seeing the printers.

63.    Going back to late 2023, Mudbots has repeatedly warned Eden Village that Eden Village is in violation of the terms of purchase (UTOP), including the training terms. Eden Village has variously ignored Mudbots, promised and failed to take remedial action, and attempted to solicit or conspire with other parties to avoid the terms of purchase.

64.    The problems, if any, which Eden Village has experienced with the Mudbots equipment have been caused by Eden Village's own insistence on having untrained personnel operate and repair equipment, and Eden Village's failure to complete pre- and post-training requirements in how to operate the printers.

65.    Eden Village commenced this action only after receiving a cease-and-desist letter from Mudbots to try and establish (unsuccessfuly) jurisdiction in the home state of Eden Village.

66.    Eden Village's actions have and will continue to irreparably harm Mudbots.

67.    Eden Village's actions and failures to comply with the UTOP have been undertaken willfully.

68.    Eden Village, through its agents, has communicated with Mudbots customers and induced them to cease business with Mudbots.

69.    Among others, Eden Village induced Jordan Clark to stop payment on a check for approximately $328,000 to Mudbots.

70.    Eden Village has induced other third parties, including online news outlets, to publish stories disparaging Mudbots in violation of the UTOP. These news outlets were acting as agents of Eden Village, publishing stories purport to be news but are actually intentional violations of the UTOP undertaken at Eden Village's direction using the news outlet as a proxy.

71.    Other prospective customers of Mudbots have not purchased because of these news stories, causing great harm to Mudbots.

72.    Mudbots alleges damages and violations by Eden Village of UTOP paragraphs 6, 22, 23, 24, 30, 33, 40, 42, 57, 59, 62 – 66, 71, 74, 82, 99, 100 – 102, 104, 111, 112, 113, and 116 – as well as numerous post purchase training terms.

73.    Drury posted on Facebook highlights concerning a partnership with Hammons School of Architecture for a design-build project using a Mudbots' printer sold to Eden Village in December of 2023.

74.    Drury began using Mudbots' confidential, pretraining materials to teach Drury students.

75.    Eden Village has posted various videos online showing poor quality prints made using untrained personnel.

76.    Various organizations recognize Schlueter and give him humanitarian awards.

77.    Eden Village altered and reconstructed the Mudbots' printers after purchase using untrained technicians.

78.    Eden Village has continued using Mudbots' printers through 2025.

79.    Eden Village's unlawful conduct has and will damage the Mudbots through the loss of customers, profits, business, reputation, trade secrets losses and goodwill. Mudbots has suffered further damage through expenditures associated with bringing this action.

## FIRST CAUSE OF ACTION
### BREACH OF CONTRACT - UTOP
### (Against Eden Village)

80. Mudbots incorporates and re-alleges all of the foregoing paragraphs as if fully set forth herein.

81. Mudbots and Eden Village entered into contracts, including the UTOP, whereby Eden Village remitted the purchase price for a printer to Mudbots which was discounted by 20%.

82. In exchange for the printer and discount, Eden Village agreed to various terms of purchase memorialized in the UTOP.

83. Eden Village breached its agreement with Mudbots by failing to abide by the UTOP.

84. As a result of this breach, Mudbots has been substantially harmed.

85. Eden Village to liable to Mudbots for damages for breach of contract in an amount to be determined at trial, including the 20% discount given to Eden Village.

## SECOND CAUSE OF ACTION
### PROMISSORY ESTOPPEL
### (Against Eden Village)

86. Mudbots realleges and reincorporates each of the preceding paragraphs as though fully set forth herein.

87. Eden Village, by virtue of its dealings with Mudbots and the purchase of the printers, established a reasonable expectation by Mudbots that Eden Village would abide by the terms of purchase, and not put a printer on public display at Drury College for unrestricted use in its curriculum, or attempt to compete with Mudbots.

88. Eden Village promised no printer would be used for educational purposes at Drury.

89.    Drury later, after the printer was purchased, promised to get signed NDAs from every student who saw the printer.

90.    Before even purchasing the printer, Drury began marketing publicly to students, prospective students, and the public, that Drury would be incorporating the printer into its curriculum.

91.    Acting in reasonable reliance on that expectation and to its own detriment, Mudbots delivered two printers to Eden Village.

92.    Mudbots suffered detriment by providing a printer which ended up in the public domain.

93.    Eden Village promptly delivered one printer to Drury for use in its curriculum, as planned.

94.    Eden Village received and accepted consideration (in the form of the printers) and other valuable consideration from Mudbots in connection with these expectations.

95.    Eden Village restricted the ability of Mudbots to control its research and development, IP, and the quality of public printers, by using the printer publicly at a university causing substantial harm to the Mudbots.

96.    Eden Village are liable to Mudbots for detrimental reliance in an amount to be determined at trial.

**THIRD CAUSE OF ACTION**
**FRAUDULENT MISREPRESENTATION**
**(Against Eden Village)**

97.    Mudbots incorporates all of the foregoing paragraphs as if fully set forth herein.

98.    Eden Village represented to Mudbots that it was seeking to purchase printers only to build homes for the homeless, and not as a proxy for Drury College, to induce Mudbots to sell Eden Village printers.

99.   Eden Village also represented it would not attempt to compete with Mudbots.

100.  Eden Village made various misrepresentations about its intended use of the printers, and reason for forming Eden Building Solutions, all of which were false.

101.  Eden Village never had any intention of honoring its commitments to Mudbots; and, in fact, intended to dishonor them.

102.  Eden Village intended to use the printers for the financial benefit of its principals, using Eden Building Solutions as a proxy, while representing otherwise.

103.  Eden Village made material misrepresentations to Mudbots regarding Eden Village's business and intended use of the printers which were false.

104.  Eden Village intentionally disregarded the truth of its representations to Mudbots for purpose of inducing Mudbots to act as it would not have otherwise done and sell printers to Eden Village, as well as train Eden Village personnel in the use of the printers and demonstrate the printers for Eden Village and its agents/personnel.

105.  Mudbots did, in fact, act upon Eden Village's false representations and expended substantial cash assets in reliance on those representations, as well as selling its technology to Eden Village.

106.  Eden Village materially misrepresented to Mudbots the intended purpose of the printers.

107.  Eden Village intended use of the printers, and relationship with Eden Building Solutions, Drury College, and Traci Sooter, were presently existing material fact at the time Mudbots and Eden Village contracted, which Eden Village knew to be false or made recklessly, knowing it had insufficient knowledge upon which to base such representations.

108.   Mudbots has suffered a loss as a result of its reliance on Eden Village's misrepresentations in an amount to be determined at trial.

109.   Eden Village has, by engaging in the conduct set forth above, knowingly and recklessly made numerous material representations concerning its intentions, the intended use of the printers, its business affairs, its principals, its intention to compete with Mudbots, Drury College, and other presently existing material facts, which were false, for the purpose of inducing the Mudbots to act by selling printers to Eden Village (and Eden Building Solutions).

110.   These actions justify the imposition of punitive damages.

111.   Mudbots, acting reasonably and in ignorance of the falsity of Eden Village's representations, did in fact rely upon the representations and were thereby induced to part with risk and impart to Eden Village the printers to Mudbots' injury, and Mudbots has been extensively damaged thereby in an amount to be proved at trial.

**FOURTH CAUSE OF ACTION**
**COMMON LAW FRAUD**
**(Against Eden Village)**

112.   Mudbots incorporates all of the foregoing paragraphs as if fully set forth herein.

113.   Eden Vilalge made oral promises and executed documentation with Mudbots for the purpose of forming a contract, which did in fact form a contract, in which Eden Village made promises to Mudbots which Eden Village had no intention of honoring, or which Eden Village made with reckless disregard for their truth or falsity of the promises.

114.   Eden Village caused Mudbots to invest time, funds and assets in Eden Village's artifice of fraud in reliance on Eden Village's misrepresentations (as further set forth above) and Mudbots has been thereby injured.

115. Eden Village principals personally benefited, and intended to benefit, from the fraud perpetrated on Mudbots in the form of consideration from Drury College and one or more churches realized from the printer purchases which was imparted to Eden Village in exchange for Mudbots' IP and confidential information.

116. Eden Village is liable to Mudbots for common law fraud.

## FIFTH CAUSE OF ACTION
## INTENTIONAL INTERFERENCE WITH EXISTING ECONOMIC RELATIONS
### (Against Eden Village)

117. Mudbots realleges and reincorporates each of the preceding paragraphs as though fully set forth herein.

118. Mudbots stood to make significant profit by virtue of contracts Mudbots had with existing customers, including Ascend Construction.

119. Eden Village, acting through its principals and agents, intentionally interfered with these economic relations by inducing Jordan Clark (a principal of Ascend Construction) to stop payment on a check for approximately $328,000+ and seek to terminate its contract with Mudbots.

120. Eden Village made false representations, which were defamatory and/or libelous, for the purpose of interfering with Mudbots' relationship with Ascend Construction and/or causing Ascend to stop payment and terminate its relationship with Mudbots.

121. Eden Village did, or attempted to do the same, with other of Mudbots' customers.

122. Eden Village is liable to Mudbots for intentional interference in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION
## INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS
### (Against Eden Village)

123.    Mudbots realleges and reincorporates each of the preceding paragraphs as though fully set forth herein.

124.    Mudbots stood to make significant profits by virtue of contracts Mudbots would otherwise have imminently entered with other parties for the purchase of printers.

125.    Eden Village intentionally interfered with these future transactions whereby Mudbots stood to profit by inter alia: (1) demonstrating technologies proprietary to Mudbots over which Mudbots has now lost control; (2) disparaging and/or defaming and/or libeling Mudbots to others, including through news outlets acting as proxies; and (3) communicating false, disparaging, defamatory and/or libelous information to actual and prospective customers of Mudbots.

126.    Eden Village is liable to Mudbots for intentional interference in an amount to be determined at trial.

## SEVENTH CAUSE OF ACTION
## NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS
### (Against Eden Village)

127.    Mudbots realleges and reincorporates each of the preceding paragraphs as though fully set forth herein.

128.    Mudbots stood to make significant profit by virtue of its future sales of printers to other parties.

129.    Eden Village negligently interfered with future transactions as Mudbots through disclosure of confidential information; and (2) communicating false, defamatory, disparaging and/libelous information to prospective customers, including Ascend Construction; all of which eliminated the opportunity to sale these printers to other parties.

130.    This interference was caused negligently by Eden Village.

131.    Eden Village had actual knowledge that buyers intended to purchase printers and would be disincentivized from doing so by Eden Village's actions.

132.    This restriction and hindrance of the ability of Mudbots to sell printers to prospective customers caused by Eden Village caused substantial harm to Mudbots.

133.    Eden Village is liable to Mudbots for negligent interference in an amount to be determined at trial.

### EIGHTH CAUSE OF ACTION
### UNJUST ENRICHMENT
### (Alternative Claim Against Eden Village)

134.    Mudbots realleges and reincorporates each of the preceding paragraphs as though fully set forth herein.

135.    Through unlawful means, Eden Village has benefited economically at Mudbot's expense.

136.    A benefit has been conferred on Eden Village at Mudbot's expense in the form of, inter alia, labor and consideration, and discounted printers, from Mudbots.

137.    A benefit has been conferred on Eden Village at Mudbot's expense in the form of the acquisition of Mudbots' technology which Eden Village has demonstrates with impunity to others for their own benefit.

138.    Eden Village appreciated and had knowledge of this benefit as Eden Village sought and schemed unlawfully for its realization.

139.    Eden Village accepted and has retrained this benefit under such circumstances as to make it inequitable for Eden Village to retain this benefit without payment of its value to Mudbots.

140.    Eden Village is liable for unjust enrichment to Mudbots in an amount to be determined at trial.

## NINTH CAUSE OF ACTION
### BREACH OF CONTRACT
### (Against Eden Village)

141.    Mudbots realleges and reincorporates each of the preceding paragraphs as though fully set forth herein.

142.    Eden Village entered into various NDAs with Mudbots, collectively attached hereto above.

143.    Traci Sooter entered into an identical NDA with Mudbots attached hereto above. Although she purported to be acting for Eden Village when signing this contract; she was, in fact, acting for Drury University in doing so.

144.    Eden Village assumed various obligations to keep information disclosed to them about Mudbots' printers confidential in these NDAs.

145.    Eden Village exchanged the confidential information it agreed in these NDAs not to disclose to Drury after signing the NDAs.

146.    Eden Village breached its agreement with Mudbots by failing to abide by the NDAs.

147.    As a result of this breach, Mudbots has been substantially harmed.

148.    Eden Village is liable to Mudbots for damages for breach of contract in an amount to be determined at trial.

## TENTH CAUSE OF ACTION
### BREACH OF CONTRACT
### (Against Eden Building Solutions)

149.    Mudbots realleges and reincorporates each of the preceding paragraphs as though fully set forth herein.

150. Eden Building Solutions entered into a Training Terms Agreement with Mudbots referenced above and incorporated herein.

151. Eden Building Solutions assumed various obligations to keep information disclosed to them about Mudbots' printers confidential in these NDAs.

152. Eden Building Solutions exchanged the confidential information it agreed not to exchange in otherwise failed to fulfill its obligations under the Training Terms Agreement, including training obligations and obligations governing personnel who could operate the printers, as well as obligations about locating the printers and practice prints.

153. Eden Building Solutions did not record video or meet quotas in the Training Terms Agreement, as well as failing to comply obligations for large prints, site control, and mix training.

154. Eden Building Solutions breached its agreement with Mudbots by failing to abide by various provisions of the Training Terms Agreement.

155. As a result of this breach, Mudbots has been substantially harmed.

156. Eden Building Solutions is liable to Mudbots for damages for breach of contract in an amount to be determined at trial.

<u>ELEVENTH CAUSE OF ACTION</u>
**BREACH OF CONTRACT**
**(Against Eden Building Solutions)**

157. Mudbots realleges and reincorporates each of the preceding paragraphs as though fully set forth herein.

158. Eden Building Solutions entered into an RMD Agreement with Mudbots referenced above and incorporated herein.

159.    Eden Building Solutions assumed various obligations in connection with the RMD Agreement.

160.    Eden Building Solutions failed to fulfill its obligations under the RMD Agreement, including performance obligations, obligations of confidentiality, sales commitments, reporting requirements, permissions and defamation.

161.    Eden Building Solutions breached its agreement with Mudbots by failing to abide by various provisions of the RMD Agreement.

162.    As a result of this breach, Mudbots has been substantially harmed.

163.    Eden Building Solutions is liable to Mudbots for damages for breach of contract in an amount to be determined at trial.


## PRAYER FOR RELIEF

WHEREFORE, on the above claims, Mudbots prays for judgment against Eden Village and Eden Building Solutions as follows:

1.    For judgment holding Eden Village and Eden Building Solutions liable for the breach of contract claims above, including all liquidated and actual damages;

2.    For a preliminary and permanent injunction, under 15 U.S.C. § 1116, restraining and enjoining Eden Village, its agents, servants, employees, officers and those persons in act of concert or participation with Eden Village, from any further violations of the terms of purchase and specifically ordering Eden Village to undertake remedial action;

3.    For a judgment holding the parties liable for intentional interference with economic relations;

4.    For a judgment holding Eden Village liable for negligent interference with economic relations;

5.    That Eden Village's unlawful actions be declared exceptional and Mudbots be awarded its reasonable attorney fees;

6.    For costs and attorney fees;

7.    For punitive damages; and

8.    For any other such relief as the Court may deem necessary.


DATED AND SIGNED this 5th day of September, 2025.


/s/

_____

STEVEN L. RINEHART

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 5th day of September, 2025, a true and correct copy of the foregoing MUDBOTS' ANSWER, COUNTERCLAIMS AND THIRD-PARTY CLAIMS was served on the following person(s) indicated below:

| | |
|---|---|
| All attorneys of record | _____ US Mail, Postage Prepaid |
| | _____ Facsimile |
| | _____ Hand-Delivery |
| | _____ Federal Express |
| | __X__ Electronically (ECF/PACER) |

/s/ Steven Rinehart

_____

Steven Rinehart